1   MICHAEL A. SWEET (SBN 184345)
    msweet@foxrothschild.com
2   DALE L. BRATTON (SBN 124328)
    dbratton@foxrothschild.com
3   FOX ROTHSCHILD LLP
    235 Pine St., Suite 1500
4   San Francisco, CA 94104-2734
    Telephone:    415.364.5540
5   Facsimile     415.391.4436

6   Attorneys for Debtor
    PALM DRIVE HEALTH CARE DISTRICT
7

8                 UNITED STATES BANKRUPTCY COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                       SANTA ROSA DIVISION

11
    In Re:                              Bk. No.: 14-10510
12
            PALM DRIVE HEALTH CARE      Chapter 9
13          DISTRICT, a California local health
            care district,
14                                      **MEMORANDUM OF POINTS AND
                    Debtor.             AUTHORITIES IN SUPPORT OF
15                                      DEBTOR'S EX PARTE MOTION
                                        FOR AUTHORITY TO ENTER INTO
16                                      POST-PETITION SECURED
                                        FINANCING AGREEMENT WITH
17                                      THE COUNTY OF SONOMA ON AN
                                        INTERIM AND FINAL BASIS
18                                      PURSUANT TO PURSUANT TO 11
                                        U.S.C. § 364(c) AND FED. R. BANKR.
                                        P. 4001(c)**
19

20

21          Palm Drive Health Care District (the "District"), debtor in the above-captioned

22  bankruptcy case, submits this memorandum of points and authorities in support of its motion

23  ("Motion") for entry of an order authorizing the District to enter into a post-petition secured

24  financing agreement with the County of Sonoma ("Sonoma") on an interim and final basis

25  pursuant to 11 U.S.C. § 364(c) (as incorporated into Chapter 9 of the Bankruptcy Code by 11

26  U.S.C. § 901(a)) and Fed. R. Bankr. P. 4001(c).

                                  - 1 -

# I. __INTRODUCTION__

The District is in urgent need of cash to meet its near-term payroll and other operating expenses, while it transitions to a realigned service profile with lower cost structure. The District has attempted to obtain unsecured financing or financing treated as an allowed admin expense under 11 U.S.C. § 503. Specifically, the District approached several potential financing sources including a neighboring health care district and Sonoma itself. However, no party was willing to lend funds to the District on an unsecured basis. Under state law, the District is authorized to borrow short-term against parcel tax revenues pursuant to Cal. Govt. Code § 53854. Sonoma has offered to loan the District up to $1,800,000 on a junior secured basis to meet the District's short-term needs (the "Sonoma Loan" or the "Loan"). *See generally* Declaration of Thomas M. Harlan ("Harlan Decl."), filed herewith. Accordingly, the District seeks approval to enter into a secured financing agreement with Sonoma on an interim and final basis pursuant to 11 U.S.C. § 364(c) and Fed. R. Bankr. P. Rule 4001(c). For the reasons more fully set forth below, the Court should grant the Motion.

# II. __JURISDICTION__

1. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are §§ 364(c) [1] (as incorporated into Chapter 9 of the Bankruptcy Code by § 901(a) and Rule 4001(c) of the Federal Rules of

---

[1] Statutory references are to title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

Case: 14-10510   Doc# 11   Filed: 04/14/14   Entered: 04/14/14 19:04:44   Page 2 of 10

Bankruptcy Procedure.[2]

## II.   FACTUAL BACKGROUND

1.   On April 7, 2014 (the "Petition Date"), the District filed its voluntary petition (the "Petition") under Chapter 9 of the Bankruptcy Code, commencing this case.

2.   The District is a local health care district organized under California Health & Safety Code §§ 32000 *et seq*., and accordingly is a "municipality" as such term in defined in Bankruptcy Code § 101(40).  The District operates Palm Drive Hospital in Sebastopol, California, and provides other health care and education services.

### A.   Authorization to File for Chapter 9 Relief

3.   The District is specifically authorized in its capacity as a local public entity to be a debtor under Chapter 9 of the Bankruptcy Code by the laws of the State of California.  Cal. Govt. Code §§ 53760 *et seq*.

4.   As authorized by California Government Code § 53760.5, after a noticed public hearing held on April 1, 2014, at which public comment was received on the District's fiscal condition, the District declared a fiscal emergency by a resolution adopted unanimously by the District's Board of Directors.  *See* Resolution 14-04 (the "Authorizing Resolution"), adopted on April 1, 2014, Exhibit 1 to Petition.

### B.   Prior Chapter 9 Filing

5.   The District had previously filed a Chapter 9 case on April 5, 2007 (Case No. 07-10388) (the "Prior Chapter 9").  The Prior Chapter 9 Case resulted in the confirmation of a successful plan of adjustment in June 2009, and payments to creditors provided for under the plan were completed.  Payments to holders of long-term bonds were continued unimpaired under that plan, and payments on all bonds of the District continue to be current. Nevertheless, despite the success of the plan in the Prior Chapter 9 Case, the District has faced continuing, and mounting, operational cost pressures as described in the recitals to the

---

[2] Rule references are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

Case: 14-10510   Doc# 11   Filed: 04/14/14   Entered: 04/14/14 19:04:44   Page 3 of 10

Authorizing Resolution.

**C.** **Current Fiscal Issues and Need for Post-Petition Financing**

6. The District's bonded indebtedness includes long-term obligations as provided under the terms of the indentures for the Series 2005 Certificates of Participation (the "2005 Certificates") and the Series 2010 Certificates of Participation (the "2010 Certificates" and together with the 2005 Certificates, the "Indenture Certificates"). The Indenture Certificates are secured by revenues from a parcel tax levied under the authority of Measure W approved by the voters of the District in 2004. Harlan Decl., ¶ 5.

7. As set forth in the Indenture Certificates, each year, after principal, interest, and certain reserves are funded from parcel tax revenues, the indenture trustee (the "Indenture Trustee") remits to the District certain "excess revenues" (the "Excess Revenues"), which the District is then free to use for its operations in providing health care services. These Excess Revenues are received in staggered amounts, with by far the largest sum received in December each year. Harlan Decl., ¶ 6.

8. Prior to filing the Petition commencing the present Chapter 9 case, the District has attempted to obtain unsecured financing or financing treated as an allowed administrative expense under § 503 of the Bankruptcy Code. Specifically, the District approached several potential financing sources including a neighboring health care district and Sonoma itself. However, no party was willing to lend funds to the District on an unsecured basis. Harlan Decl., ¶ 7.

9. Under state law, the District is authorized to borrow short-term against parcel tax revenues pursuant to Cal. Govt. Code § 53854.

10. Sonoma has offered to loan the District funds on a secured basis to meet the District's short term needs. The Sonoma Loan will be secured by a lien on the Excess Revenues, junior to the liens of the Indenture Certificates. To the extent that the Sonoma Loan cannot be repaid from Excess Revenues while maintaining all required payments on the Indenture Certificates, the District would also be obligated to use other lawfully available,

- 4 -

unencumbered funds to repay any such shortfall of the Sonoma Loan. Harlan Decl., ¶ 9.

11. Accordingly, the District seeks approval to enter into a secured financing agreement, which includes one or more tax and revenue anticipation notes, which will include the pledge of the collateral within those documents. The District's Board resolution approving the borrowing and the notes with their pledge provisions comprise the Financing Agreement for which approval is sought.

**D.** **Terms of the Financing Agreement**

12. The essential terms of the Financing Agreement are as follows (Harlan Decl., ¶ 11):

a.    The Loan is contingent on the approval of the Sonoma Board of Supervisors, which approval is being actively sought. The Sonoma Loan is on the agenda of a meeting of the Board of Supervisors scheduled for April 15, 2014.

b.    The aggregate principal sum is an amount not to exceed $1,800,000.

c.    An initial disbursement not to exceed $600,000 would be made in the week ending April 18, 2014. This sum is essential on an interim basis, and before a final hearing on the Motion, for two reasons. First, the District has immediate cash needs – including payroll for medical and other staff – that cannot otherwise be met before a final hearing. As the cash flow attached hereto shows, without the initial disbursement the District would have at best cash on hand of only $3,318 by the week ending April 25. Second, and also critically, the District must have assured access to this interim disbursement in order to give vendors, employees, physicians who attend at the Hospital, and others sufficient confidence such that they will continue to work for or do business with the District. Not to have this assured funding immediately would endanger the process of orderly wind-down of the Hospital facilities and transition to a reduced level of health care services, which is essential to the public welfare and patient safety in the District's difficult circumstances.

- 5 -

d.   A final disbursement of up to $1,200,000 would be made in the week ending July 4, 2014.

e.   The interest rate would be 4.0 percent per annum.

f.   A cash forecast for the use of the funds from the Loan is attached to this Declaration as Exhibit A, covering the period from the week ending April 18, 2014, through the week ending July 4, 2014.  This 12-week period is the most critical portion of the term of the Loan.  By July the District begins to receive funds from various intergovernmental programs that will bring greater stability to its cash flow, despite the insufficiency to sustain the Hospital's scope as it was prior to the filing of this Chapter 9 case.

g.   The Loan could be prepaid in whole or in part at any time without premium.

h.   Because of fiscal-year limitations under the California tax anticipation note statutory regime, the initial disbursement amount would be repaid from parcel taxes that will be regularly received or accrued in the fiscal year ending June 30, 2014.

i.   Any unpaid balance of principal, interest and other charges would then be due in full not later than February 28, 2015.  It is expected that the County will receive payment in full from the last installment of parcel tax Excess Revenues that are to be regularly received or accrued in December 2014.

j.   The Loan will be made as one or more tax and revenue anticipation notes.  These notes will include the provisions for pledge of the parcel tax Excess Revenues as security for repayment, junior to the liens of the Indenture Certificates.  It is these notes, and the District Board resolution approving the borrowing, that comprise the Financing Agreement.

k.   The Indenture Trustee has not given any notice of intent to exercise remedies for any and all non-payment defaults (*i.e.*, other than principal, interest, required reserves, fees and charges) which do exist or may exist during the term of the

- 6 -

Sonoma Loan, so long as all required payments are kept current under the terms of the Indenture Certificates, the District does not challenge the validity, enforceability, or priority of the Indenture Certificates and the liens created thereunder, and that there is not any determination that the Indenture Trustee does not have a first priority claim, lien, and charge on the right to possession of the Parcel Tax Revenues described in the 2005 Certificates and 2010 Certificates.. The District is in covenant default under the Indenture Certificates, for such matters as not paying its other debts as they come due and filing for bankruptcy. However, even with the Sonoma Loan the debt service coverage ratio for subordinated debt under the Indenture Certificates for the aggregate of the Indenture Certificates and the subordinated Sonoma Loan would likely be met.

l.      An appropriate order of the Bankruptcy Court approving the Sonoma Loan is a condition to the effectiveness of the agreements of the parties.

m.      The Sonoma Loan has been negotiated at arms-length and in good faith by Sonoma, with the CEO Mr. Harlan, District staff, the District's independent financial consultants, and the District's attorneys. The Motion requests a finding that Sonoma is extending the credit in good faith for the purposes of § 364(e) of the Bankruptcy Code, and the District believes that such a finding is fully justified in the circumstances of this loan and this case.

## II.      LEGAL STANDARD FOR RELIEF SOUGHT

13.     By this Motion, the District seeks authorization to enter into the post-petition junior secured Financing Agreement with Sonoma pursuant to § 364(c) of the Bankruptcy Code (as incorporated into Chapter 9 by § 901(a)) and Rule 4001(c).

14. Section 364(c) of the Bankruptcy Code provides, in pertinent part, as follows:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—

- 7 -

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

15. Thus, the only statutory prerequisite for obtaining credit on a junior secured basis is that the debtor be unable to obtain such credit otherwise. *In re Ames Dept. Stores, Inc*., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under Bankruptcy Code §§ 364(a) and (b)).

16. A debtor should also show that the financing agreement is fair and reasonable under the circumstances. *See In Re Sterling Mining Co.* 2009 WL 2514167 (Bankr. D. Idaho) at *3 (summarizing factors for approval of § 364(c) financing).

17. Courts generally give broad deference to the business decisions of a debtor. In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (loan terms approved because they "reflect[ed] sound and prudent business judgment ..., [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors").

18. Rule 4001(c)(2) authorizes the Court to approve emergency interim financing prior to a final hearing. The final hearing must be on not less than 14 days' notice to the parties required under the Rule.

/ / /

/ / /

## III. **ARGUMENT**

### A. **The District Should Be Authorized To Enter Into The Financing Agreement**

19. As discussed above, the proposed Financing Agreement will allow the District to

- 8 -

continue to operate with proper regard for the public welfare and patient safety while it works to transition to a realigned service profile with lower cost structure.

### 1. The District Meets the Statutory Requirements

20. The Court should grant the Motion because the District meets the statutory requirements set forth in § 364 of the Bankruptcy Code. As set forth above, after a good faith effort, the District was unable to obtain financing on any other basis other than the junior secured post-petition loan from Sonoma. Further, the only existing lienholders on the collateral (*i.e.*, 2005 Certificates and the 2010 Certificates, represented by the Indenture Trustee) are fully secured by a regular stream of parcel tax revenues that do not vary with the District's operational results. These lienholders are well-protected by the 1.0 debt service coverage ratio required by the Indenture Certificates for subordinate debt, and through their representative the Indenture Trustee the bondholders – to date – have not objected to issuance of the Sonoma Loan.

### 2. The Terms And Amount of the Financing Agreement Are Reasonable

21. The District, in its sound business judgment, submits that the amount of the Sonoma Loan and the nature and scope of the Collateral to be provided is reasonable, since the lending is calculated to cover immediate, emergency immediate needs of the District. The Sonoma Loan will enable the District to survive its immediate crisis and proceed in an orderly manner with its bankruptcy case into the latter part of the year when its cash flow becomes more stable. The Loan is therefore fair and in the best interests of creditors. Accordingly, the Court should authorize the District to enter into the Financing Agreement.

### 3. Sonoma Is Extending Credit In Good Faith

22. The Loan has been negotiated at arms-length and in good faith by Sonoma for the purposes of § 364(e) of the Bankruptcy Code. Harlan Decl., ¶ 11(m). Sonoma should therefore be found, in an order approving the Motion, to be entitled to the protections of § 364(e) when the Financing Agreement is entered into and the Loan is funded.

## IV. NOTICE

- 9 -

23. Pursuant to Rule 4001(c)(1)(C), notice of the interim hearing on this Motion is being given by personal service, electronic mail, telephonic notice, or overnight delivery service to the following parties or their counsel: (a) the Office of the United States Trustee ("UST"); (b) the Indenture Trustee, (c) the List of Creditors Holding 20 Largest Unsecured Creditors filed pursuant to Rule 1007(d), and (d) any parties who have to date filed requests for special notice under Rule 2002 (the Indenture Trustee has done so). The Debtor submits that this notice satisfies the notice requirements of Bankruptcy Code § 102(1)(A) and Rule 4001(c)(1)(C) in the emergency circumstances facing the Debtor, and the constrained time frame that has been available to seek interim approval.

24. Further pursuant to Rule 4001(c)(1)(C), for the final hearing on the Motion, notice will be given to the parties named in para. 23 preceding (or a creditors' committee if one has been appointed by the U.S. Trustee, in lieu of the list of 20 largest unsecureds) by personal service, automated ECF electronic service in the case of the UST, or overnight delivery service.

## IV. **CONCLUSION**

25. The District respectfully requests that the Court enter an order in the form of the proposed order submitted by the District, authorizing the District to enter into the Financing Agreement with Sonoma, pursuant to 11 U.S.C. § 364(c) and Fed. R. Bankr. P. 4001(c), and granting such other and further relief as the Court deems just and proper.

Date: April 14, 2014          FOX ROTHSCHILD LLP


                              */s/ Dale L. Bratton*
                              Dale L. Bratton
                              Attorneys for Debtor
                              Palm Drive Health Care District

- 10 -