MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
DALE L. BRATTON (SBN 124328)
dbratton@foxrothschild.com
FOX ROTHSCHILD LLP
235 Pine St., Suite 1500
San Francisco, CA 94104-2734
Telephone:	415.364.5540
Facsimile	415.391.4436

Attorneys for Debtor
PALM DRIVE HEALTH CARE DISTRICT

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SANTA ROSA DIVISION

| | |
|---|---|
| In Re:<br><br>PALM DRIVE HEALTH CARE DISTRICT, a California local health care district,<br><br>Debtor. | Bk. No.: 14-10510<br><br>Chapter 9<br><br>**DECLARATION OF THOMAS M. HARLAN IN SUPPORT OF DEBTOR'S EX PARTE MOTION FOR AUTHORITY TO ENTER INTO POST-PETITION SECURED FINANCING AGREEMENT WITH THE COUNTY OF SONOMA ON AN INTERIM AND FINAL BASIS PURSUANT TO PURSUANT TO 11 U.S.C. § 364(c) AND FED. R. BANKR. P. 4001(c)** |

I, Thomas M. Harlan, declare as follows:

1. I am the Chief Executive Officer of Palm Drive Health Care District (the "District"), debtor in the above-captioned bankruptcy case. I make this declaration in support of the District's ex parte motion (the "Motion") for authority to enter into a post-petition secured financing agreement ("Financing Agreement") with the County of Sonoma ("Sonoma") on an interim and final basis pursuant to pursuant to 11 U.S.C. § 364(c), as incorporated into Chapter 9 of the Bankruptcy Code by 11 U.S.C.

-1-

§ 901(a), and Fed. R. Bankr. P. 4001(c). I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would testify competently to these facts.

2. The District is a local health care district organized under California Health & Safety Code §§ 32000 *et seq*. As authorized by Government Code § 53760.5, after a noticed public hearing held on April 1, 2014, at which public comment was received on the District's fiscal condition, the District declared a fiscal emergency by a resolution adopted unanimously by the District's Board of Directors. *See* Resolution 14-04 (the "Authorizing Resolution"), adopted on April 1, 2014, a true and correct copy of which is attached as Exhibit 1 to the Petition filed commencing this bankruptcy case.

3. On April 7, 2014 (the "Petition Date"), the District filed for relief under Chapter 9 of title 11 of the United States Code (the "Bankruptcy Code").

4. The filing of this Chapter 9 case on an emergency basis was made necessary by the severe fiscal emergency facing the District. The District faces an immediate cash crisis, and without access to the financing sought by the Motion, the District would exhaust its cash in less than 60 days. The emergency is so severe that on April 7, 2014, the Board of Directors of the District further adopted a resolution directing management to begin the process of closing Palm Drive Hospital and realigning the District's health care services to a reduced cost structure. In the meantime, however, the District has immediate need for short-term financing, to conduct the wind-down of the Hospital and the realignment of other services in an orderly manner consistent with public welfare and patient safety through the critical transition period.

5. The District's bonded indebtedness includes long-term obligations as provided under the terms of the indentures for the Series 2005 Certificates of Participation (the "2005 Certificates") and the Series 2010 Certificates of Participation (the "2010

-2-

Certificates" and together with the 2005 Certificates, the "Indenture Certificates"). The Indenture Certificates are secured by revenues from a parcel tax levied under the authority of Measure W approved by the voters of the District in 2004.

6. As set forth in the Indenture Certificates, each year after principal, interest, and certain reserves are funded from parcel tax revenues, the indenture trustee (the "Indenture Trustee") remits to the District certain "excess revenues" (the "Excess Revenues"), which the District is then free to use for its operations in providing health care services. These Excess Revenues are received in staggered amounts, with by far the largest sum received in December of each year.

7. Prior to filing the Petition commencing the present Chapter 9 case, the District has attempted to obtain unsecured financing or financing treated as an allowed administrative expense under Section 503 of the Bankruptcy Code. Specifically, the District approached several potential financing sources including a neighboring health care district and Sonoma County itself. However, no party was willing to lend funds to the District on an unsecured basis.

8. Under state law, the District is authorized to borrow short-term against parcel tax revenues pursuant to Cal. Govt. Code § 53854.

9. Sonoma has offered to loan to the District funds on a secured basis to meet the District's short term needs (the "Sonoma Loan" or the "Loan"). The Sonoma Loan will be secured by a lien on the Excess Revenues, junior to the liens of the Indenture Certificates. To the extent that the Sonoma Loan cannot be repaid from Excess Revenues while maintaining all required payments on the Indenture Certificates, the District would also be obligated to use other lawfully available, unencumbered funds to repay any such shortfall of the Sonoma Loan.

10. Accordingly, I have negotiated agreement for the Sonoma Loan, and sought approval to incur the Sonoma Loan without objection from the Indenture Trustee. I have therefore directed the District's attorneys to present the Motion for entry of

-3-

an order authorizing the post-petition secured Finance Agreement.

11. The essential terms of the Financing Agreement for the Sonoma Loan are these:

   a. The Loan is contingent on the approval of the Sonoma Board of Supervisors, which approval is being actively sought. The Sonoma Loan is on the agenda of a meeting of the Board of Supervisors to be held on April 15, 2014.

   b. The aggregate principal sum is an amount not to exceed $1,800,000.

   c. An initial disbursement not to exceed $600,000 would be made in the week ending April 18, 2014. This sum is essential on an interim basis, and before a final hearing on the Motion, for two reasons. First, the District has immediate cash needs – including payroll for medical and other staff – that cannot otherwise be met before a final hearing. As the cash flow attached hereto shows, without the initial disbursement the District would have at best cash on hand of only $3,318 by the week ending April 25. Second, and also critically, the District must have assured access to this interim disbursement in order to give vendors, employees, physicians who attend at the Hospital, and others sufficient confidence such that they will continue to work for or do business with the District. Not to have this assured funding immediately would endanger the process of orderly wind-down of the Hospital facilities and transition to a reduced level of health care services, which is essential to the public welfare and patient safety in the District's difficult circumstances.

   d. A final disbursement of up to $1,200,000 would be made in the week ending July 4, 2014.

   e. The interest rate would be 4.0 percent per annum.

   f. A cash forecast for the use of the funds from the Loan is attached to this Declaration as Exhibit A, covering the period from the week ending April 18, 2014, through the week ending July 4, 2014. This 12-week period is the most critical portion of the term of the Loan. By July the District begins to

-4-

receive funds from various intergovernmental programs that will bring greater stability to its cash flow, despite the insufficiency to sustain the Hospital's scope as it was prior to the filing of this Chapter 9 case.

    g. The Loan could be prepaid in whole or in part at any time without premium.

    h. Because of fiscal-year limitations under the California tax anticipation note statutory regime, the initial disbursement amount would be repaid from parcel taxes either received or accrued not later than June 30, 2014.

    i. Any unpaid balance of principal, interest and other charges would then be due in full not later than February 28, 2015. It is expected that the County will receive payment in full from the last installment of parcel tax Excess Revenues that are to be regularly received or accrued in December 2014.

    j. The Loan will be made as one or more tax revenue anticipation notes. These notes will include the provisions for pledge of the parcel tax Excess Revenues as security for repayment, junior to the liens of the Indenture Certificates. It is these notes, and the Board Resolution approving the borrowing, that comprise the Financing Agreement.

    k. The Indenture Trustee is being asked to forbear from exercising remedies for any and all non-payment defaults *(i.e.*, other than principal, interest, required reserves, and fees and charges) which do exist or may exist during the term of the Sonoma Loan, so long as all required payments are kept current under the terms of the Indenture Certificates, the District does not challenge the validity, enforceability, or priority of the Indenture Certificates and the liens created thereunder, and that there is not any determination that the Indenture Trustee does not have a first priority claim, lien and charge on the right to possession of the Parcel Tax Revenues described in the 2005 Certificates and 2010 Certificates. The District is in covenant default under the Indenture Certificates, for such matters as not paying its other debts as they come due

-5-

Case: 14-10510   Doc# 12   Filed: 04/14/14   Entered: 04/14/14 19:06:44   Page 5 of 8

and filing for bankruptcy. However, even with the Sonoma Loan the debt service coverage ratio for subordinated debt under the Indenture Certificates for the aggregate of the Indenture Certificates and the subordinated Sonoma Loan would likely be met.

l.  An appropriate order of the Bankruptcy Court approving the Sonoma Loan is a condition to the effectiveness of the agreements of the parties.

m.  The Sonoma Loan has been negotiated at arms-length and in good faith by Sonoma, with me, my staff, the District's independent financial consultants, and the District's attorneys. The Motion requests a finding that Sonoma is extending the credit in good faith for the purposes of § 364(e) of the Bankruptcy Code, and I believe that such a finding is fully justified in the circumstances of this loan and this case.

[Signature on the Following Page]

1    I declare under penalty of perjury under the laws of the United States that the above
2    statements are true and correct.  Executed at Sebastopol, California, on April 13, 2014.

         　　　　　　　　　　　　*/s/ Thomas M. Harlan*
         　　　　　　　　　　　　Thomas M. Harlan

DRAFT

**Palm Drive Health Care District**  BK Filing on 4/7/14
**Cash Flow Forecast**
**Closure Under Bankruptcy Scenario**
 - Assume Loan from County

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | Forecast |
| | | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | Week Ended | 13-Week | |
| | | 4/11/2014 | 4/18/2014 | 4/25/2014 | 5/2/2014 | 5/9/2014 | 5/16/2014 | 5/23/2014 | 5/30/2014 | 6/6/2014 | 6/13/2014 | 6/20/2014 | 6/27/2014 | 7/4/2014 | Total | July 5 - 31 |
| 1 | Beginning Balance | 197,498 | 97,976 | 809,512 | 603,318 | 667,943 | 403,805 | 145,268 | 245,476 | 375,807 | 317,292 | 108,916 | 222,203 | 330,611 | 197,498 | 439,530 |
| | **Revenue** | | | | | | | | | | | | | | | |
| 2 | Total Collections | 412,934 | 413,180 | 413,180 | 366,794 | 406,376 | 406,376 | 406,376 | 268,094 | 211,602 | 211,602 | 211,602 | 211,602 | 81,680 | 4,021,395 | 378,994 |
| | **Expenses** | | | | | | | | | | | | | | | |
| | Payroll & Benefits | | | | | | | | | | | | | | | |
| 3 | Payroll | 332,102 | 157,394 | 304,064 | 152,032 | 193,413 | 96,706 | 75,210 | 37,605 | 24,713 | 12,357 | 12,357 | 6,178 | 12,357 | 1,416,488 | 37,070 |
| 4 | Pension Funding | 19,875 | 18,750 | - | 15,203 | - | 9,671 | - | 3,760 | - | 1,236 | - | 618 | - | 69,113 | 618 |
| 5 | Health Comp. | - | - | 170,000 | - | - | - | 170,000 | - | - | - | - | - | - | 340,000 | - |
| 6 | Doctors | - | - | - | - | - | 280,000 | - | - | - | - | - | - | - | 280,000 | - |
| 7 | Total Payroll & Benefits | 351,977 | 176,144 | 474,064 | 167,235 | 193,413 | 386,377 | 245,210 | 41,365 | 24,713 | 13,592 | 12,357 | 6,796 | 12,357 | 2,105,600 | 37,688 |
| | Other Operating Expenses | | | | | | | | | | | | | | | |
| 8 | A/P | 77,282 | 118,000 | 75,000 | 75,000 | 75,000 | 75,000 | - | - | - | - | - | - | - | 495,282 | - |
| 9 | Liability & WC Ins | - | - | 35,440 | - | - | - | - | 35,440 | - | - | - | 35,440 | - | 106,320 | 35,440 |
| 10 | Rent | 15,696 | - | - | 15,696 | - | - | - | - | 15,696 | - | - | - | 15,696 | 62,784 | 15,696 |
| 11 | PRIMA | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 12 | Bank Loans & Leases | - | - | 3,321 | 15,244 | - | 90,079 | - | - | - | - | - | - | - | 108,643 | - |
| 13 | McKesson Pharm Withdrawals | 20,000 | - | 20,000 | - | 20,000 | - | - | - | - | - | - | - | - | 60,000 | - |
| 14 | Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 15 | Total Other Op Expenses | 112,978 | 118,000 | 133,761 | 105,940 | 95,000 | 165,079 | - | 35,440 | 15,696 | - | - | 35,440 | 15,696 | 833,029 | 51,136 |
| 16 | Total Operating Expenses | 464,955 | 294,144 | 607,825 | 273,175 | 288,413 | 551,456 | 245,210 | 76,805 | 40,409 | 13,592 | 12,357 | 42,236 | 28,053 | 2,938,629 | 88,824 |
| 17 | **Net Cash Flow from Operations** | (52,021) | 119,036 | (194,645) | 93,619 | 117,963 | (145,080) | 161,166 | 191,288 | 171,192 | 198,009 | 199,245 | 169,365 | 53,627 | 1,082,765 | 290,170 |
| | Non-Operating Revenue | | | | | | | | | | | | | | | |
| 18 | Trans (To) / From Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19 | Non-Patient Revenue | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 20 | CMSP LIHP Payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1,200,000 |
| 21 | IGT Receipt of Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 631,806 |
| 22 | Parcel Tax Revenue | - | - | - | 400,000 | - | - | - | - | - | - | - | - | 200,000 | 600,000 | - |
| 23 | County Loan | - | 600,000 | - | - | - | - | - | - | - | - | - | - | 1,200,000 | 1,800,000 | - |
| 24 | Total Non-Op Revenue | - | 600,000 | - | 400,000 | - | - | - | - | - | - | - | - | 1,400,000 | 2,400,000 | 1,831,806 |
| | Non-Operating Expenses | | | | | | | | | | | | | | | |
| 25 | IGT Disbursement of Funds | - | - | - | - | - | - | - | - | 345,428 | - | - | - | - | 345,428 | - |
| 26 | Repayment of County Loan | - | - | - | 400,000 | - | - | - | - | - | - | - | - | 205,000 | 605,000 | - |
| 27 | Other Non-Op Expenses | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | - | - | - | - | - | - | - | 15,000 | - |
| 28 | Total Non-Op Expenses | 2,500 | 2,500 | 2,500 | 402,500 | 2,500 | 2,500 | - | - | - | 345,428 | - | - | 205,000 | 965,428 | - |
| 29 | Net Non-Operating Cash Flow | (2,500) | 597,500 | (2,500) | (2,500) | (2,500) | (2,500) | - | - | - | (345,428) | - | - | 1,195,000 | 1,434,572 | 1,831,806 |
| 30 | **Total Net Cash Flow** | (54,521) | 716,536 | (197,145) | 91,119 | 115,463 | (147,580) | 161,166 | 191,288 | 171,192 | (147,419) | 199,245 | 169,365 | 1,248,627 | 2,517,337 | 2,121,976 |
| 31 | **Total Estimated Closure Costs** | (45,000) | (5,000) | (9,050) | (26,494) | (379,601) | (110,958) | (60,958) | (60,958) | (229,708) | (60,958) | (85,958) | (60,958) | (1,139,708) | (2,275,305) | (196,583) |
| 32 | **Ending Cash Balance - BK Scenario** | 97,976 | 809,512 | 603,318 | 667,943 | 403,805 | 145,268 | 245,476 | 375,807 | 317,292 | 108,916 | 222,203 | 330,611 | 439,530 | 439,530 | 2,364,924 |

Footnotes:
(1) Estimated closure costs include closure communications, security, professional fees and the purchase of tail insurance for malpractice, workers compensation, plant and property and Directors & Officers insurance in the week ending 7/4/14.
(2) Additional expenses to be dealt with through the bankruptcy process include an estimated $3.2 million in administrative expenses and approximately $6.7 million in outstanding pre-petition accounts payable that are not included in the forecast (general unsecured claims).
(3) Collections have been discounted 15%
(4) The County loan of $1.8 million will be split into two tranches; (1) $600,000 delivered on April 18th and (2) $1.2 million delivered on July 3.

Confidential / For Discussion Purposes Only    Case: 14-10510    Doc# 12    Filed: 04/14/14    Entered: 04/14/14 19:06:44    Page 8 of 8    Page 1 of 1